UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BERRY MEADOWS, | ) |
|        Plaintiffs, *et al.*, | )   CASE NO. 4:12CV02279 |
| v. | )   JUDGE BENITA Y. PEARSON |
| TRUMBULL COUNTY HEALTH DEPARTMENT, *et al.*, | ) |
|        Defendants. | )   **MEMORANDUM OF OPINION & ORDER** [Resolving ECF Nos. 24 and 29] |

Plaintiffs Berry Meadows and Deanna Meadows[1] have brought an action under 42 U.S.C. § 1983, alleging that various officials of Trumbull County, Ohio, unlawfully retaliated against them for publishing critical remarks on Facebook, the "Trumbull County Septic News," and other media. Two of the named defendants, James Enyeart and Frank Migliozzi, have responded by bringing a counterclaim against Plaintiffs for libel and slander.

The Court is called upon at this juncture to resolve Plaintiffs' Rule 12(b) motion to dismiss the counterclaim, ECF No. 24, and Enyeart and Migliozzi's Rule 12(c) motion for judgment on the pleadings. ECF No. 29. The Court has reviewed the supporting memoranda, the responsive briefs, and the controlling law. For the reasons articulated below, the Court denies both motions.

---

[1] Digging Dirt, LLC, which is "owned and operated by Berry Meadows and Deanna Meadows" is also a plaintiff in this action. ECF No. 20 at 3. For the sake of simplicity and clarity, however, "Plaintiffs" will refer only to Berry and Deanna Meadows in this decision.

## I. Factual & Procedural History

### A. Amended Complaint

Plaintiffs' amended complaint, which was filed on December 5, 2012, alleges the following facts. *See* ECF No. 20. Plaintiffs are engaged in the business of installing, repairing, and servicing septic systems. Defendant Thomas Altiere is the elected sheriff of Trumbull County, Ohio. Defendants Thomas Stewart and Sonny Schulyer are employed by the Trumbull County sheriff. Defendants Thomas Enyeart and Frank Migliozzi are employed by the Trumbull County Health Department ("TCHD"). Each defendant in this action is sued in his individual capacity.

According to the amended complaint, Plaintiffs, through "various media," including Facebook, the Trumbull County Septic News, and public meetings of the TCHD, published statements that were critical of TCHD and several of the defendants in action. ECF No. 20 at 4. These statements include comments that (1) TCHD promoted a preference for the installation of a septic system manufactured or distributed by "EnviroGuard"; (2) although the septic system of Aliere's son was not in compliance with applicable laws and regulations, he was not required to upgrade his septic system as were other similarly situated property owners; (3) TCHD had permitted its attorney to avoid paying a $250 inspection fee; and (4) Enyeart and Migliozzi should be fired from their positions at the TCHD. ECF No. 20 at 4-5.

Plaintiffs allege that Defendants, "acting individually and in concert with one another" took the following "adverse actions": (1) Altiere and Stewart fabricated a police report and forwarded it to the Warren city prosecutor, knowing that criminal charges would be filed against Berry Meadows; (2) Altiere and Stewart threatened to arrest Berry Meadows, which threat induced him to surrender to the Warren police; (3) Altiere, Schulyer, and Migliozzi caused a "spurious" criminal complaint

to be filed against Berry Meadows in Niles Municipal Court; (4) Enyeart widely publicized the facts of the "bogus" criminal charges and of Berry Meadows' arrest; (5) Enyeart and Migliozzi threatened Plaintiffs with "negative consequences" if they continued to criticize TCHD and "persons involved with TCHD"; and (6) Altiere, Enyeart, and Migliozzi "procured" without any legal basis the revocation of Plaintiffs' installer permit. ECF No. 20 at 5-7.

Plaintiffs aver that Defendants, acting "under color of law" deprived them of the right to free speech as afforded by the First and Fourteenth Amendments to the United States Constitution and of the right to be free from arrest and malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution. ECF No. 20 at 7. Plaintiffs also claim that Defendants deprived them of the right to equal protection of the laws as guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution. ECF No. 20 at 7.

Plaintiffs seek from Defendants, jointly and severally, compensatory damages in an amount not less than $1,500,000, punitive damages in an amount not less than $1,500,000, and other relief.

**B. Counterclaim**

After the amended complaint was filed, Enyeart and Migliozzi filed a six-count counterclaim against Plaintiffs alleging libel and slander. ECF No. 22-1. The counterclaim alleges the following facts. In 2002, the State of Ohio filed a lawsuit against TCHD and the Trumbull County Board of Health ("TCBH") "due to Trumbull County's egregious septic and health violations . . . ." ECF No. 22-1 at 2. As a result of the lawsuit, TCHD and TCBH entered into a Consent Decree with the Ohio Environmental Protection Agency ("OEPA") requiring TCHD and TCBH to "eliminate septic system off-lot discharge," "filter off-lot discharge with sand filters," and achieve other sanitation goals. ECF No. 22-1 at 3. In 2008, TCHD, TCBH, and the State of Ohio amended the Consent Decree to permit

3

the filtration of off-lot discharge with certain "tertiary filters" other than the sand filters required by the Consent Decree. ECF No. 22-1 at 3. On at least two occasions thereafter, Berry Meadows submitted applications to TCHD to obtain approval of "certain filter/filters for installation in Trumbull County." ECF No. 22-1 at 3. TCHD did not grant approval because "the filters at issue [had] not been subjected to or passed the proper testing to prove that they [met] the performance of the filter required by the Consent Decree." ECF No. 22-1 at 4.

Enyeart and Migliozzi allege that because TCHD did not approve Meadows' application, Plaintiffs, seeking to "discredit [them] with the TCHD/TCBH and the general public and to ultimately have [them] demoted and/or removed from their positions and employment with the TCHD," ECF No. 22-1 at 6, published and continue to publish false and unfounded statements about Enyeart and Migliozzi to various entities, including TCHD, TCBH, the Ohio Sanitarian Registration Board, and to the general public. ECF No. 22-1 at 4-5. These statements include remarks that, "in exercising their professional duties, [Enyeart and Migliozzi] provide 'favors for friends' and that [they] wrongfully arrested and prosecuted Mr. Meadows." ECF No. 22-1 at 5. Plaintiffs allegedly published such statements on the Trumbull County Septic News webpage, in at least one complaint to the Ohio Board of Sanitarian Registration, in complaints to the TCHD and TCBH, and at monthly public meetings of TCBH. ECF No. 22-1 at 6-15.

Based on these allegations, Enyeart and Migliozzi seek injunctive relief, including the retraction of all defamatory statements made by Plaintiffs, compensatory damages, punitive damages, costs, attorney's fees, and other relief.

**C. Motions at Issue**

On December 24, 2012, Plaintiffs moved to dismiss the counterclaim, *see* ECF No. 24, under Rule 12(b)(6) on the ground that Enyeart and Migliozzi did not adequately plead their defamation claims. ECF No. 24-1 at 1. In the alternative, Plaintiffs seek dismissal under Rule 12(b)(1) on the ground that the Court lacks subject matter jurisdiction over Enyeart and Migliozzi's State-law claims. ECF No. 24-1 at 6. In support of their motion, Plaintiffs filed a memorandum of law. ECF No. 24-1. Enyeart and Migliozzi filed, on January 22, 2013, a Rule 12(c) motion for judgment on the pleadings on the basis that Plaintiffs failed to adequately plead a claim of conspiracy to violate Plaintiffs' constitutional rights. ECF No. 29. A memorandum of law was attached to that motion. Opposition briefs were filed in response to both motions, *see* ECF Nos. 26, 32, and, thereafter, Plaintiffs filed a reply in support of their motion to dismiss. ECF No. 27. No reply was in support of the Rule 12(c) motion for judgment on the pleadings, even though it was due on February 12, 2013, in accordance with L.R. 7.1(e). Enyeart and Migliozzi have therefore waived their right to file a reply. Both motions are therefore ripe for the Court's review and adjudication.

## II. Legal Standard

The Court first sets forth the well-known standard governing Rule 12(b)(6) motions to dismiss. "'[T]he very purpose of Fed. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery.'" Mitchell v. McNeil, 487 F.3d 374, 379 (6th Cir. 2007) (*quoting* Yuhasz v. Brush Wellman, Inc., 341 F.3d 559, 566 (6th Cir. 2003)). To survive a Rule 12(b)(6) motion to dismiss, the complaint must allege "enough facts to state a claim that is plausible on its face." Bell Atlantic v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

5

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense," but, where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" the complaint will not survive a Rule 12(b)(6) motion. *Id.* at 679.

"In reviewing a dismissal under Rule 12(b)(6), all allegations in the complaint should be taken as true, and the complaint is to be construed liberally in favor of the party opposing the motion to dismiss." *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is [however] inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. at 678. The pleading standard of Rule 8 does not require detailed factual allegations but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Id*.

Furthermore, the Sixth Circuit applies the foregoing Rule12(b)(6) standard to Rule 12(c) motions for judgment on the pleadings. *See Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012).

### III. Discussion

**A. Plaintiffs' Motion to Dismiss (ECF No. 24)**

(1) Failure to Adequately Plead

Plaintiffs first assert that the counterclaim should be dismissed under Rule 12(b)(6) because it fails to adequately plead claims of defamation. ECF No. 24-1 at 1. Plaintiffs specifically contend that because the counterclaim is "virtually silent" as to the content of the allegedly defamatory statements, the pleadings cannot show whether Plaintiffs' statements were made with "actual malice"

6

or whether the statements themselves assert fact or opinion, which is privileged. ECF No. 24-1 at 4. Plaintiffs also claim that the counterclaim fails to properly allege that Plaintiffs acted with actual malice because the allegations as to Plaintiffs' state of mind are "ritualistically recite[d]" and conclusory, and, therefore, must be rejected by the Court. ECF No. 24-1 at 5.

In Ohio, a claim of defamation, which includes both libel and slander, is established by proving the following elements: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Services, Inc.*, 81 Ohio App. 3d 591, 601, 611 N.E.2d 955 (1992). Because the counterclaim alleges that Enyeart is the health commissioner and medical director of the TCHD (ECF No. 22-1 at 1) and Migliozzi is the environmental director of the TCHD (ECF No. 22-1 at 1), they are public officials who are subject to the heightened burden of having to allege and prove that Plaintiffs made the allegedly defamatory statements with "actual malice." *New York Times Co. v. Sullivan*, 376 U.S. 254, 283, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). A person possesses actual malice if "the statement was made . . . with knowledge that it was false or with reckless disregard of whether it was false or not." *Id*. at 279-80. Stated differently, "the defendant must have made the false publication with a high degree of awareness of . . . probable falsity . . . or must have entertained serious doubts as to the truth of his publication . . . ." *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 667, 109 S. Ct. 2678, 105 L. Ed. 2d 562 (1989) (citations omitted; quotations omitted).

Furthermore, in order to survive dismissal, the counterclaim must contain allegations showing that the allegedly defamatory statements assert facts rather than opinions. "Expressions of

7

opinion are generally accorded absolute immunity from liability under the First Amendment." *Scott v. News-Herald*, 25 Ohio St.3d 243, 250, 496 N.E.2d 699 (1986). The Ohio Supreme Court has identified four factors that distinguish between fact and opinion: "First is the specific language used, second is whether the statement is verifiable, third is the general context of the statement and fourth is the broader context in which the statement appeared." *Id.*

The Court's review of the counterclaim reveals that the counterclaim is not "virtually silent" as to the content of the defamation.  Enyeart and Migliozzi allege, in pleadings that are incorporated into every count of the counterclaim, that Plaintiffs falsely published remarks stating that Enyeart and Migliozzi "in exercising their professional duties . . . provide 'favors for friends' . . . ." ECF No. 22-1 at 5.  This allegation receives expansion in other parts of the counterclaim, which clarify that "favors" refers to the "approv[al] of failing septic systems for use in Trumbull County for 'friends' . . . ." *See* ECF No. 22-1 at 8.  The content of these statements is sufficient to show that the statements assert fact, not opinion.  Whether Enyeart and Migliozzi approved failing septic systems for their friends is factually verifiable.  The context in which these statements were allegedly made also supports their factual nature: Plaintiffs made false accusations about Enyeart and Migliozzi in various media and fora in an attempt to have them demoted or removed from their employment at the TCHD, because they failed to approve Berry Meadow's filter applications. ECF No. 22-1 at 5.  Because the statements are factual, they are also consistent with the claim that they were made with actual malice, that is, with "knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. at 279-80.

Plaintiffs' argument that the counterclaim alleges only conclusory facts regarding their states of mind is unavailing.  The counterclaim does not merely recite the legal definition of actual malice.

8

Contrarily, the counterclaim alleges that the defamatory statements were made "[s]ubsequent to the time of informing Mr. Meadows of the TCHD's inability to approve each of the filtration device[s]" (ECF No. 22-1 at 4); for the purpose of "discredit[ing]" Enyeart and Migliozzi and to have them "demoted and/or removed" from their positions at the TCHD (ECF No. 22-1 at 6); and in furtherance of Plaintiffs' "agenda of having Mr. Meadows' filer(s) approved for use and installation in Trumbull County." ECF No. 22-1 at 6. Although "the actual malice standard is not satisfied merely through a showing of ill will"; Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. at 666; the counterclaim *also* alleges, in conjunction with the preceding facts, that Plaintiffs' accusations are "false and unfounded" (ECF No. 22-1 at 5), that the Ohio Sanitarian Registration Board determined that Plaintiffs' accusations lacked probable cause (ECF No. 22-1 at 8), and that the TCHD and TCBH investigated Plaintiffs' complaints and found them to be "meritless and unfounded." ECF No. 22-1 at 10. Viewing the facts as a whole and in the light most favorable to Enyeart and Migliozzi, they nudge the allegations beyond the category of "unadorned" accusations prohibited by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. at 678.

The counterclaim therefore pleads facts that adequately demonstrate that Plaintiffs' statements are not privileged opinions and were made with actual malice.[2]

### (2) Lack of Subject Matter Jurisdiction

Plaintiffs argue, in the alternative, that the counterclaim should be dismissed under Rule 12(b)(1) because the Court cannot exercise supplemental jurisdiction over Enyeart and Migliozzi's

---

[2] The Court declines to address whether, in alleging a defamation claim, the pleader *must* specify the content of the allegedly defamatory statements. Although the parties brief this issue, *see* ECF Nos. 26 at 7; 27 at 2, they submit no controlling authority on-point. Moreover, the Court finds that addressing this issue is not necessary to the resolution of Plaintiffs' motion.

9

State-law claims. ECF No. 24-1 at 6. Plaintiffs claim that the counterclaim lacks sufficient facts in common with the underlying federal action asserted in the complaint. ECF No. 24-1 at 7. Plaintiffs also contend that the counterclaim is "permissive" as opposed to "compulsory" and therefore does not form part of the same controversy giving rise to federal jurisdiction. ECF No. 24-1 at 7-9.

The supplemental jurisdiction statute controls whether the Court has jurisdiction over the defamation claims asserted in the counterclaim:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). "Claims form part of the same case or controversy when they 'derive from a common nucleus of operative facts.'" *Blakely v. United States*, 276 F.3d 853, 861 (6th Cir. 2002) (*quoting Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 454-55 (6th Cir. 1996)); *cf. Grimes v. Mazda North American Operations*, 355 F.3d 566, 572 (6th Cir. 2004) (third-party claims by defendants against a third party "fall within the court's supplemental jurisdiction if the impleaded defendant's actions share a 'common nucleus of operative fact' with the case already before the court"). To satisfy the common nucleus test "only a loose factual connection is necessary . . . ." *Blakely v. United States,* at 862 (*citing Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)); *see* 13D C. Wright, A. Miller, E. Cooper & R. Freer, Federal Practice & Procedure, § 3567.1, p.359 (3d ed. 2008) (common nucleus test "embraces all claims with a loose factual connection to the jurisdiction-invoking claim").

The counterclaim passes this test. The central underpinnings of both the counterclaim and the amended complaint is what Plaintiffs said and wrote: the amended complaint alleges that Defendants retaliated against Plaintiffs due to the content of their speech; the counterclaim alleges that the substance of the speech was defamatory. In addition, neither the defamation raised in counterclaim nor the retaliation averred in the amended complaint can be proven without resolving when, how, and where the statements were made. As yet another example, the character and scope of Enyeart and Migliozzi's employment within the TCHD are essential to both pleadings. According to the counterclaim, Plaintiffs defamed Enyeart and Migliozzi because they did not approve Berry Meadows' filter applications, and the amended complaint alleges that Enyeart and Migliozzi "procured the revocation" of Plaintiffs' installer permit because of Plaintiffs' speech. ECF No. 20 at 6-7. These facts form a "common nucleus" that justifies the exercise of supplemental jurisdiction.

Plaintiffs, characterizing the counterclaim as permissive rather than compulsory, cite to non-controlling authority for the proposition that "'only a compulsory counterclaim forms a part of the same case or controversy giving rise to federal jurisdiction.'" ECF No. 24-1 at 9. A compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and "does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). A permissive counterclaim is a counterclaim that is not compulsory. Fed. R. Civ. P. 13(b). It is true that courts may always exercise supplemental jurisdiction over compulsory counterclaims. "The § 1367 test for supplemental jurisdiction is broader than the test for compulsory counterclaims, so counterclaims that are compulsory under the "same transaction or occurrence" test automatically pass the § 1367 'same Article III case or controversy' test." *Sparrow v. Mazda American Credit*, 385 F. Supp. 2d 1063, 1067 (E.D. Cal. 2005). The Court

11

disagrees with Plaintiffs' statement of the law, however, because courts have recognized that *both* compulsory and permissive counterclaims may satisfy §1367(a). *See, e.g.,* [Campos v. Western Dental Services, Inc., 404 F. Supp. 2d 1164, 1168 (N.D. Cal. 2005)](#) ("if the counterclaim is compulsory, this court has supplemental jurisdiction over it.  If the counterclaim is permissive, the question is *whether supplemental jurisdiction exists under Section 1367*" [emphasis added]).  Moreover, as suggested by the district court in *Campos*, a court seeking to determine whether it has supplemental jurisdiction over a counterclaim may find it more useful to assess whether the counterclaim passes the common nucleus test than to engage in an inquiry into whether the counterclaim is compulsory or permissive. *See* 13D C. Wright, A. Miller, E. Cooper & R. Freer, Federal Practice & Procedure, § 3567.1 at p.359 ("courts should avoid bromides . . . concerning permissive counterclaims and engage instead in a meaningful consideration of whether the claim satisfies § 1367(a)").  Because the Court has already concluded that the counterclaim shares a common nucleus of operative facts with the amended complaint, the compulsory-permissive distinction is unimportant here.

Plaintiffs lastly argue that the Court should use its "judicial discretion" to decline supplemental jurisdiction.  [ECF No. 27 at 3](#).  The Court disagrees. Subsection (c) of the supplemental jurisdiction statute provides that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a)" if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

12

28 U.S.C. § 1367(c).³ None of these factors applies. In addition to the statutory factors, the Sixth Circuit has instructed district courts to also "consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (*quoting Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988). Because the two pleadings share important facts in common, litigating the two cases in a single federal forum will preserve judicial and litigant resources and avoid the inconvenience and cost of litigating in two different courts. Plaintiffs' presumptuous and unfounded remark that "State court judges are more familiar with the law of defamation" (ECF No. 24-1 at 7) fails to convince the Court that supplemental jurisdiction should not be exercised in the present case.

The Court therefore denies Plaintiffs' motion to dismiss the counterclaim.

**B. Enyeart and Migliozzi's Motion for Judgment on the Pleadings (ECF No. 29)**

Enyeart and Migliozzi urge the Court to grant judgment in their favor based upon the pleadings because the amended complaint fails to "allege any facts showing an agreement or plan formulated and executed by defendants to achieve a conspiracy." ECF No. 29 at 5. They point out that the amended complaint does not identify a separate count for the conspiracy claim, and that the various allegations claiming that the individual defendants "act[ed] individually and in concert with one another" are legal conclusions that the Court should not accept as true. ECF No. 29 at 5.

The Sixth Circuit has stated the standard governing a § 1983 conspiracy claim as follows:

---

³ The other statutory exception to § 1367(a) is found in § 1367(b), which is not relevant here. "Section 1367(b) excludes supplemental jurisdiction in specific circumstances, and *only* in diversity of citizenship cases, and removes supplemental jurisdiction only over particular claims by plaintiffs." 13D C. Wright, A. Miller, E. Cooper & R. Freer, Federal Practice & Procedure, § 3567 at p.332 (emphasis in original).

13

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556, 563 (6th Cir. 2011) (*quoting Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)). Moreover, "conspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Id.* (quotations omitted).

After reviewing the amended complaint, the Court concludes that it survives Enyeart and Migliozzi's motion. The Court first notes that Enyeart and Migliozzi improperly seek judgment on the entire amended complaint, *see* ECF No. 29 at 1, even though they identify only one of Plaintiffs' legal claims–the conspiracy claim– as inadequately pleaded. And, even casting aside the allegations which Enyeart and Migliozzi claim are conclusory, the complaint alleges sufficient facts to create a reasonable inference that Enyeart and Migliozzi conspired to deprived Plaintiffs of their constitutional rights. The complaint alleges that Plaintiffs criticized Enyeart, Migliozzi, and other defendants in various media and fora, and that Defendants responded by engaging in a course of conduct designed to discredit Plaintiffs, including publicizing the "bogus" criminal charges against Berry Meadows, threatening Plaintiffs if they continued to criticize TCHD, and revoking Plaintiffs' installer permit. ECF No. 20 at 6-7. The Court is able to infer from the pleadings that Enyeart and Migliozzi participated in a plan aimed at punishing Plaintiffs for their public criticism. *Cf. Weberg v. Franks,* 229 F.3d 514, 528 (6th Cir. 2000) ("Rarely in a conspiracy case will there be direct evidence of an express agreement . . . circumstantial evidence may provide adequate proof of conspiracy."

14

[quotations omitted]). Morever, Enyeart and Migliozzi do not dispute that Plaintiffs have adequately pleaded Defendants' commitment of overt acts in furtherance of the conspiracy.

Accordingly, Defendants' motion for judgment on the pleadings is denied.

## IV. Conclusion

Based on the foregoing discussion, the Court denies Plaintiffs' motion to dismiss the counterclaim, and denies Enyeart and Migliozzi's motion for judgment on the pleadings.

IT IS SO ORDERED.

  April 29, 2013                          *s/ Benita Y. Pearson*
Date                                          Benita Y. Pearson
                                                     U.S. District Judge